PROGRESO FINANCIERO, INC., Plaintiff and Appellee, v. MARÍA LIBERTAD GÓMEZ, Defendant and Appellant.

No. 7742. Argued May 2, 1939.—Decided January 10, 1940.

*Susoni & Soltero*, for appellant. *Horacio Franceschi* and *Rafael Pastor*, for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

This is an appeal from a judgment in favor of the plaintiff, rendered by the District Court of San Juan in an action to collect a note. The facts are these:

The plaintiff is a banking corporation. In its Stock Register Book an entry appears, dated February 18, 1929, according to which the defendant subscribed on that date to 25 shares of stock par value $100 each, and her account was charged with the total amount, $2,500. On June 19th, 1929, she paid $500 in cash. Her account was credited with the money and a certificate was issued for shares 101–105. The by-laws specify that directors must own at least five shares of stock. The defendant admitted that she had paid for those five shares to become a director. The bank started business on July 15, 1929. The defendant became a member of the Board of Directors and Treasurer of the corporation on that date or, according to her statement, on July 16, 1929 and at the same time was appointed cashier of the bank.

The certificate for five shares remained in possession of the bank as a bond for the true fulfillment of her duties as treasurer. On September 3 she executed a note for $500, which amount was duly credited to her account, and the balance standing was, and is, $1,500. This note was due September 15, 1930; it was renewed on that date by the execution of a new note, which is the one the plaintiff tries to collect. The note says:

"I will pay to Progreso Financiero, Inc., or order, in this city of San Juan, P. R., the sum of Five Hundred Dollars ($500.00) to take care of the note for shares due today for the same amount, on the 15th of September, 1931. (Shares 106–125 inclusive; value received to satisfaction.)

"I bind all my property to this obligation and submit myself to any judicial claim necessary for its collection, expenses to be charged to me. Th's document will not bear interest, as long as it is taken care of at its maturity. Partial payments may be accepted, with extensions of the balance. If not taken care of it will bear interest at the rate of 6 per cent yearly.

"(s) María L. Gómez,
Signature of stockholder.
"(s) Luis Gómez,
Surety."

On July 16, 1931, the defendant ceased as treasurer and cashier.

On September 8, 1931, the plaintiff wrote a letter to the defendant, with a reminder that the note would bear interest unless taken care of. On September 14, 1931, the defendant wrote to the plaintiff and asked for "an extension under the same conditions of the present document." On September 14, 1932, the defendant again wrote to the plaintiff, asking for a new extension of her $500 note "on account of corporation stock, in the same manner and conditions of the original document." The complaint was filed June 16, 1933, and the defendant summoned August 9, 1933. She wrote a third letter on September 14, 1933, saying: "Taking into consideration the conditions of the note for $500 which I have

in that institution on account of shares I hereby ask for an extension under the same conditions as the original document."

The complaint asks for judgment against the defendant for the principal of $500 and interest thereon at 6 per cent from September 15, 1931, to May 31, 1933, amounting to $49.00.

The lower court found that the defendant voted at stockholder's meeting as the owner of 25 shares; that dividends for 25 shares were credited to her accounts; that she was in charge of the corporation books for two years and never tried to amend or correct the entry which established her as a subscriber who had twenty-five shares, of which five had been issued and paid, and twenty not issued and for which a $500 note had been paid on account.

The defendant's position is that she never subscribed to the 25 shares; that she bought five which she had to have to become a director, but that she was not a subscriber to the other twenty. She claims that there is no valid consideration to the note, because it was not tendered on account of the twenty shares (as shown from its face) but that it was executed so that the bank could display it, among others of the same kind signed by other directors, to the city government with the idea that the government might deposit public funds in the bank; that this was done so that the bank would appear to have a larger capital, and that the notes could be offered to the city government as collateral. All this appears from the answer; and the defendant also alleges that it was orally agreed between the directors that the notes would not be collected unless the public funds were deposited. On examination she stated that if the deposits were obtained the notes were to be paid by the dividends from stock.

It was also proved that the Treasurer of Puerto Rico at the instance of the bank agreed that the Capital Stock

subscribed would not be included in the Capital Stock which is taxed; but that the tax should apply only to the stock wholly paid for; and that the amounts due on subscriptions need not be included in the capital stock but deducted therefrom. The amount due on the note was deducted by the bank, as capital not paid in. From this the defendant infers that the bank considered the note as worthless. The lower court decided that the note was executed and tendered as partial payment for the twenty shares subscribed by the defendant; that it was due on the date set, and that it was not subject to the condition that it could only be collected in case public funds were deposited or it was given as collateral guarantee to municipal corporations who became depositors as the answer alleges or to the condition that it was to be paid for with stock dividends as the defendant tried to show.

The lower court gave judgment for the plaintiff. The defendants appeared and assigned six errors. We shall consider them somewhat as argued.

■■ The first assignment charges that the lower court erred in deciding that a contract of subscription had existed as to the twenty shares. The appellant argues that a contract of subscription must be in writing because the word "subscribe" means "to write" or "to sign."

A contract of subscription is similar to any other contract, so the decisions run. If there is a valid consideration, the agreement of the parties, and a lawful object, the contract is perfected. It need not be written down, unless the charter of the corporation, the by-laws, or the state laws so require.

"In this country the rule is that a subscription may be made in any way in which other contracts may be made, and that any agreement by which a person shows an intention to become a stockholder is sufficient to bind both him and the corporation." *In Re Hannevig*, 10 Fed. (2) 945.

A subscription may be implied from conduct. 1 Thompson on Corporations, par. 668, p. 927.

It has been generally decided that a contract of subscription can be implied by the acts of the alleged subscriber.

"Where there has been no direct subscription, one may be charged as an implied subscriber by his acceptance of shares alloted to him and his agreement to pay for them." *In re L. M. Alleman Hardware Co.*, 172 Fed. 611.

The second assignment is:

"The lower court committed error in considering that the plaintiff's President was authorized to fix date and conditions to the payment due in case that a contract of subscription for shares existed, independently of the plaintiff's Board of Directors and its by-laws."

Nothing shows that such a thing happened or that the lower court so ruled. The evidence shows that no calls were made upon the defendant; that she executed and tendered a note in part payment without being formally required to do so. The President of the Bank testified that "it was agreed that she would pay $500 in cash (the by-laws say that she has to have five shares paid for to be a director) and the balance when the Board called for it." And after saying that the Board did not make any calls goes on:

"It occurred to me that instead of waiting for the Board to call for that payment, it was the same for us to sign a note of $500 to pay on account and pay that amount every year, without waiting for the Board to do so."

The appellant copies these statements in her brief and says:

"It can be seen that there was no oral contract. Not only because the evidence offered does not so show, but because these could not be, because for it to be perfected the board had to act and the Board never took any action. The President was never authorized by a Board agreement to fix a term to the supposed contract of subscription of shares, only way through which the appellant was bound to pay on its maturity, the amount due on the subscribed shares."

The defendant argues that the contract was not perfected because the Board never fixed the date or form of payment.

That is, the theory of the appellant is that the contract would not be perfected unless a call was made. Such a theory is without merit, as we shall see by general considerations.

The appellant says that she paid for five shares without subscribing to the other twenty. The appellee holds that the defendant subscribed to twenty-five. The lower court found that at the time the contract was made, it was agreed that the appellant would pay for five; that a certificate for those five would be issued (to enable her to become a director); and that the other twenty shares would remain as a subscription. They would remain subject to the usual practice in regard to subscriptions.

Generally a contract of subscription is one by which a person binds himself to buy a number of shares of a corporation. If the corporation is already formed, the corporation allots certain shares to that subscriber. From that moment he is a shareholder. The general practice is that at the time of the contract no agreement is made as to time or mode of payment. The Board of Directors calls upon the subscribers from time to time to make part payments. The contract is perfected from the time that the corporation accepts the subscription and allots the shares. Otherwise it could not be enforced. The appellant's theory is that the contract is not perfected until one party tries to enforce it. That theory is absurd.

 The third error assigned says:

"The lower court also committed error in considering that the note executed by the defendant had a valid consideration at law."

The appellant argues that there was no subscription contract and that the note was an accommodation note. The argument that the note was executed to offer to the city government as collateral, has been elsewhere stated.

Everything points to the conclusion that the condition did not exist. The city government of San Juan, on September 17, 1929—two weeks after the execution of the original

note—decided that public funds had to be backed by collateral guaranty and specified that only bonds of the Federal, Insular or Municipal Governments would be accepted; and that only the capital paid for in cash would be considered. One year later the note now in issue was substituted for the first. Year after year it has been renewed. No mention of any condition was made in the petitions for renewal.

Even if the condition had been proved, it is a question whether such a condition would be enforced by the courts.

"It is well settled, therefore, as a general rule, that an agreement between a corporation and a particular subscriber, by which the subscription is not to be payable, or is to be payable in part only, whether it is for the purpose of pretending that the stock is really greater than it is . . . or for any other purpose, is illegal and void as in fraud of other stockholders or creditors, or both, and cannot be either enforced by the subscriber or interposed as a defense in an action on the subscription . . . In these cases the stipulation or special agreement itself only is void, and it does not affect the subscription. The courts hold the subscriber to his subscription as if the unlawful agreement had not been made, as the only means of preventing fraud and protecting the other subscribers and creditors." 14 C. J. pp. 570, 571, par. 580. The text is supported by *Upton* v. *Tribilcock*, 91 U. S. 45.

But even if the note had been executed under a valid condition, the circumstances stated by the appellant point to a condition precedent; one which would render the subscription ineffective until it was fulfilled. The appellant would not have been a subscriber, or a shareholder, until the funds were obtained from the city. And the fact was established that the appellant voted as the owner of 25 shares at stockholder meetings; that dividends for those twenty-five shares were credited to her account. This acceptance of her status as shareholder seems to indicate that if there had been a condition precedent, it was waived.

■ The fourth error says:

"The lower court committed error in considering proved, by the mere entry in a corporation book, the account for subscriptions to

stock amounting to the sum of $2,500 in the name of the defendant without determin'ng the reasons which justify the legal existence of said entry.''

The appellant evidently means that the judge erred in considering the contract proved and not the account. The lower court gave no ruling as to the account. The account itself was not in issue, as this is not a proceeding to recover the balance of the account or part thereof. The account was presented in evidence to prove the contract and show that there was a valid consideration to the note.

The weight of authority is against the appellant. She says that the fact that her name appeared in the stockbook of the corporation is not sufficient evidence to prove that she was a subscriber. The Supreme Court of the United States has said:

''Where the name of an individual appears in the stock book of a corporation as a stockholder, the prima facie presumption is that he is the owner of the stock, in a case where there is nothing to rebut the presumption; and in an action against him as a stock-holder, the burden of proving that he is not a stock-holder or of rebutting that presumption, is cast upon the defendant.'' *Turnbull* v. *Payson*, 95 U. S. 418, 421, and cases cited.

In this case the plaintiff did not rely on that presumption. It was proved that the defendant, by act and letter, has frequently ratified her subscription. She voted at stockholders meetings. She gave a note in part payment and received dividends which were credited to her account.

''A stockholder who has paid part (of subscription) and appears on stock list, and has received dividends, cannot deny ownership of stock.'' *Sauger* v. *Upton,* 97 U. S. 54; *In re Hannevig, supra.*

The fifth and sixth errors were:

''5.—The lower court also committed error in considering as an asset of the Bank the value of the shares in issue in th's case without taking into account the evidence presented to the effect that said value was excluded from the assets of the corporation at the request

828

of the plaintiff itself, after a hearing before the Board of Review and Equalization and an investigation on the part of the Government to that purpose.

"6.—And finally the lower court committed error in deciding the case against the evidence presented."

So far as specific they are only a repetition of the errors adduced under the previous assignments and need not be given special consideration. The fact that no certificate issued was unimportant.

More generally in this case the plaintiff presented and proved a negotiable instrument signed by defendant. The presumption of consideration arose which the defendant failed to destroy.

The judgment should be affirmed.